UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KURTIS HEAD,<br><br>                    Plaintiff,<br><br>         v.<br><br>KOMMANDIT-GESSELSCHAFT<br>MS SAN ALVARO OFFEN<br>REEDEREI GMBH & CO., et al.,<br><br>                    Defendants. | CASE NO. C12-1561JLR<br><br>ORDER GRANTING<br>DEFENDANT REEDEREI<br>CLAUS-PETER OFFEN GMBH &<br>CO. KG'S MOTION FOR<br>SUMMARY JUDGMENT |

## I.    INTRODUCTION

Before the court is Defendant Reederei Claus-Peter Offen GmbH & Co. KG's ("RCPO") motion for summary judgment.  (Mot. (Dkt. # 20).)  The court has reviewed

ORDER- 1

the motion, all documents filed in support of and opposition thereto, the balance of the record, and the governing law.  Being fully advised the court GRANTS the motion.[1]

## II.    BACKGROUND

Plaintiff Kurtis Head alleges that on or about August 15, 2008, he sustained an injury while employed by Stevedoring Services of America as a longshoreman working aboard the M/V CAP PRESTON.  (*See generally* Compl. (Dkt. # 5-1) at 1-2.)  Nearly three years later, on July 25, 2011, Mr. Head filed a complaint related to this alleged incident in King County Superior Court for the State of Washington.  (*See id.* at 1.)  In addition to RCPO, Mr. Head named Defendants Kommandit-Gesellschaft MS San Alvaro Offen Reederei GmbH & Co. ("Kommandit-Gesellschaft"), Hamburg Sud North America, Inc. ("HSNA"), and Norton Lilly International, Inc. ("Norton Lilly").

The parties are in dispute as to whether RCPO is both the owner and the operator of the M/V CAP PRESTON or simply the operator of the vessel.  RCPO states that, between 2008-2011, it managed the M/V CAP PRESTON, and that during those years the vessel was continuously bareboat chartered and time chartered to other entities that are not parties to this suit.  (Kostowski Decl. (Dkt. # 28) ¶ 7.)  RCPO insists that it is not the owner of the vessel, but rather that the owner is Kommandit-Gesellschaft.  (*See* Mot. at 3; *id.* at 4 n.1 ("Plaintiff mistakenly believes RCPO owned the CAP PRESTON. . . . RCPO did not and does not own the ship."); *see also* Rosseland Decl. (Dkt. # 5-1 at 59-102) ¶ 4 ("I understand [the vessel owner] to be Kommanditgesellschaft [sic]"); JSR

---

[1] No party has requested oral argument, and the court deems this motion to be appropriate for disposition without it.

ORDER- 2

(Dkt. # 18) ¶ 16 ("[RCPO] is not, and has never been the owner of the MV CAP PRESTON").)

Mr. Head asserts that RCPO is both the owner and operator of the M/V CAP PRESTON.  (Resp. at 2.)  To support this contention, Mr. Head relies upon a Ballast Water Reporting Form that the vessel submitted to the State of Washington Department of Fish and Wildlife ("WDFW") in advance of its arrival at the Port of Seattle on August 15, 2008.  (Pozzi Decl. (Dkt. # 26) ¶3, Ex. 2.)  The form identifies RCPO as the owner and Norton Lilly as the agent.  (*See id.*)  The disputed factual issue of whether RCPO is both the owner and operator of the vessel or just the operator, however, is not material with respect to the issues of service and statute of limitations that the court considers below.[2]

Mr. Head accomplished service of process upon HSNA and Norton Lilly on July 26, 2011, by serving their authorized agent in the State of Washington.  (Pozzi Decl. ¶ 2, Ex. 1 (attaching Declaration of Service upon authorized agent for Lilly Norton);

---

[2] In the parties' Joint Status Report, Mr. Head asserts that RCPO is the owner of the M/V CAP PRESTON and that "'Kommandit-Gessllshaft' [sic] is a title designating the form of business entity (limited partnership) of the vessel owner."  (JSR ¶ 16 at 5.)  RCPO asserts in contravention that "Kommandit-Gesellschaft . . . is a separate party that Plaintiff named as one of four defendants in this case."  (*Id.*)  Kommandit-Gesellschaft has not appeared in this litigation. (*See generally* Dkt.)  RCPO also asserts that it "is not aware of any effective service of process by Plaintiff upon that named defendant, although in the state court proceedings, [Mr. Head] filed a "Declaration of Service" purporting to have served papers on "CT CORPORATION SYSTEM as Registered Agent for NORTON LILLY . . . as agent for KOMMANDIT-GESELLSCHAFT . . . ."  (JSR ¶ 16 at 5 (citing Verification of State Court Records, Ex. A (Dkt. 5-1) at 147.)  Issues involving whether Defendants RCPO and Kommandit-Gesellschaft are separate corporate entities and whether Mr. Head's service upon Kommandit-Gesellschaft was effective, however, are not presently before the court.

ORDER- 3

Verification of State Court Records, Ex. A (Dkt. 5-1) at 17[3] (attaching Declaration of Service upon authorized agent for HSNA); *Id.* at 19 (attaching Declaration of Service upon authorized agent for Lilly Norton).)  Further, Mr. Head asserts that because Norton Lilly was identified as an agent on the Ballast Water Reporting Form (Pozzi Decl. Ex. 2), and because the July 26, 2011, summons he served upon Norton Lilly was addressed "TO THE DEFENDANTS" (*id.* Ex. 1), he effectively served RCPO as well when he served Norton Lilly.  (*See* Resp. (Dkt. # 25) at 2-3.)  RCPO denies that Norton Lilly is its agent capable of receiving service of process under the law and disputes that Mr. Head's service upon Lilly Norton in 2011 was effective service upon RCPO under the law. (Reply (Dkt. # 27) at 4-6.)

On July 17, 2012, almost one year following service, HSNA moved for summary judgment.  (Verification of State Court Records, Ex. A at 43-57.)  During the year between when Mr. Head served process on HSNA and when HSNA moved for summary judgment, Mr. Head served no discovery on HSNA and never sought to depose any HSNA witness.  (Warner Decl. (Dkt. # 23) ¶ 5.)  Mr. Head filed no opposition to HSNA's motion.  (*Id.* ¶ 4.)  Instead, several days before the hearing on the motion, Mr. Head's counsel executed a stipulated order dismissing HSNA from the case with prejudice.  (*Id.* ¶ 4, Ex. A.)  Mr. Head's counsel's signed the stipulation of dismissal on

---

[3] All page references to the Verification of State Court Records are to the page number assigned by the court's electronic filing system (otherwise referred to as CM/ECF).

September 9, 2012,[4] and counsel for HSNA filed it with the court on October 26, 2012. (*Id.*)

On August 1, 2012, approximately two weeks after HSNA filed for summary judgment, Norton Lilly also moved for summary judgment. (Verification of State Court Records, Ex. A at 117-34.) Mr. Head also never sought to depose any witness from Norton Lilly, although he did serve some interrogatories on Lilly Norton in late July 2012. (Johnson Decl. (Dkt. # 22) ¶ 11.) When counsel for Norton Lilly saw the proposed stipulated order of dismissal for HSNA, he inquired whether Mr. Head would be willing to similarly dismiss Norton Lilly with prejudice as well because, like HSNA, he did not see any grounds for a claim against Norton Lilly. (*Id.* ¶¶ 3-5.) Counsel for Mr. Head told Norton Lilly's counsel that Mr. Head could not agree to dismiss Norton Lilly "until he was sure that the owner and operator of the vessel would not raise what [counsel for Mr. Head] called 'agency issues.'" (*Id.* ¶ 7.) Not only did Mr. Head's counsel fail to articulate a basis for pursuing a claim against Norton Lillybased on Mr. Head's alleged injuries, he acknowledged that Mr. Head had sued Norton Lilly to try to obtain service of process on the owner and operator of the vessel and that Mr. Head would not agree to dismiss Norton Lilly because he needed more time to serve the owner and operator of the vessel. (*Id.* ¶ 8.)[5]

---

[4] Mr. Head's counsel authorized HSNA's counsel to sign the stipulation on his behalf. (Warner Decl. ¶ 4.)

[5] Mr. Head objects to the court's consideration of this testimony. (*See* Resp. at 4.) He asserts that the testimony by Norton Lilly's counsel concerning out of court statements made by

ORDER- 5

On August 16, 2012, more than one year after he served HSNA and Lilly Norton, and more than four years after his alleged accident, Mr. Head served RCPO in Hamburg, Germany, pursuant to the Hague Convention. (Verification of State Court Records, Ex. A at 148-52 (attaching Certificate of Service upon RCPO in Hamburg, Germany, pursuant to Hague Convention); *see generally* Hamilton Decl. (Dkt. # 21).)

On September 14, 2012, following its service under the Hague Convention, RCPO removed the action to federal court. (*See* Not. of Rem. (Dkt. # 1).) Norton Lilly re-filed its motion for summary judgment in federal court. (SJ Mot. (Dkt. # 6).) Once again, Mr. Head filed no response or opposition to the motion. (Johnson Decl ¶ 10; *see generally* Dkt.) On November 7, 2012, the court granted Norton Lilly's motion. (11/7/12 Order (Dkt. # 13).)

RCPO now moves for summary judgment arguing that Mr. Head failed to properly serve RCPO within the three-year statutory period. (*See generally* Mot.) Mr. Head opposes the motion asserting that he timely served RCPO at the time he served Norton Lilly on July 26, 2011, and that in any event his service upon Norton Lilly and HSNA tolled the statute of limitations with respect to the other defendants in this action, including RCPO. (*See generally* Resp.) RCPO argues that Norton Lilly is not its agent

---

Mr. Head's counsel constitutes hearsay and should be excluded. (*Id.*); *see* Fed. R. Evid. 801(c) (defining hearsay); Fed. R. Evid. 802 (stating hearsay is not admissible). RCPO is correct, however, that these statements are not hearsay. (*See* Reply at 3.) "A statement . . . is not hearsay [if] . . . [t]he statement is offered against an opposing party and . . . was made by the party's agent . . . on a matter within the scope of that relationship and while it existed . . . ." *See* Fed. R. Evid. 801(d)(2)(C), (D). Mr. Head's counsel was his agent, the statements were made during the course of that relationship, and the statements are being offered against Mr. Head. Thus, under the Federal Rules of Evidence, these statements do not fall within the definition of hearsay and are not excludable on that basis. *See id.*

1 capable of receiving service of process on its behalf in Washington and that therefore

2 service upon Norton Lilly was not effective with respect to RCPO.  RCPO also argues

3 that both Norton Lilly and HSNA are improper defendants that Mr. Head merely sued to

4 artificially circumvent the three-year statute of limitations and that such manipulation of

5 the statutory limitations period is not permitted under Washington law.  (*See generally*

6 Mot.)  The court addresses these arguments below.

7                             **III.   ANALYSIS**

8    **A.  Standard for Summary Judgment**

9          Summary judgment is appropriate if the evidence, when viewed in the light most

10 favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

11 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

12 P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of*

13 *L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

14 showing that there is no genuine issue of material fact and that he or she is entitled to

15 prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets its

16 burden, then the non-moving party "must make a showing sufficient to establish a

17 genuine dispute of material fact regarding the existence of the essential elements of his

18 case that he must prove at trial."  *Galen*, 477 F.3d at 658.  The court is "required to view

19 the facts and draw reasonable inferences in the light most favorable to the [non-moving]

20 party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The ultimate question on a summary

21 judgment motion is whether the evidence "presents a sufficient disagreement to require

22

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B. Service of Process and Statute of Limitations**

Mr. Head's maritime tort personal injury claim is subject to a federal three-year statute of limitations. *See* 46 U.S.C. § 30106 ("Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose."). His claim arose on August 15, 2008, and thus, absent tolling, the statutory limitations period would ordinarily expire on August 15, 2011. Mr. Head filed his complaint in state court on July 25, 2011. (*See* Compl. at 1.)

Washington courts have repeatedly held that the filing of a complaint does not constitute the commencement of an action for purposes of tolling the statute of limitations. *O'Neill v. Farmers Ins. Co. of Wash.*, 125 P.3d 134, 137 (Wash. Ct. App. 2004). The plaintiff must still serve a defendant within ninety days of the date of filing in order for the commencement to be complete. *Id.*; *see also* RCW 4.16.170 (providing that an action is "commenced" for purposes of tolling the statute of limitations only if the plaintiff serves process upon "one or more of the defendants" within 90 days of the date of filing the complaint). Further, service on one defendant tolls the statute of limitations as to the other, not-as-yet served defendants. *Sidis v. Brodie/Dormann, Inc.*, 815 P.2d

ORDER- 8

1  781, 783 (Wash. 1991).[6]  Here, there is no dispute that Mr. Head served both HSNA and
2  Norton Lilly on July 26, 2011.  (*See* Pozzi Decl. ¶ 2, Ex. 1; Verification of State Court
3  Records, Ex. A at 17, 19; Mot. at 4 ("[P]laintiff served HSNA and Norton Lilly in July of
4  2011 right after filing suit.).)

5  Mr. Head argues that he has also properly and timely served RCPO on two
6  separate grounds.  First, he asserts that under the *Sidis* rule stated above service on
7  Norton Lilly tolled the statute of limitations under RCW 4.16.170 for more than one year
8  until he was able to accomplish service on RCPO in Germany under the Hague
9  Convention on August 16, 2012.  (*See* Resp. at 3-4.)  Second, he asserts that his service
10 upon Norton Lilly on July 26, 2011, was also effective as service upon RCPO under
11 RCW 4.28.080(13).  (*See id.* at 2-3.)  RCW 4.28.080(13) authorizes a party to serve
12 process upon a foreign or alien steamship company or charterer by serving "any agent
13 authorized by such company or charterer to solicit cargo or passengers for transportation
14 to or from ports in the state of Washington."  *Id.*  Mr. Head argues that Norton Lilly is
15 identified as an "agent" on the Ballast Reporting Form, which the M/V CAP PRESTON
16 submitted to the WDFW within hours prior to Mr. Head's injury, and thus qualifies as

---

[6] Because Defendants were all served in this action prior to removal, Washington procedural law governs these intertwining issues of service of process and statute of limitations. *See, e.g.*, *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980) ("We are persuaded that the question whether . . . [the amended complaint] was time-barrred, is governed by the law of California because the relevant amendments and service of process preceded removal to federal court.") (citing *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963); *Talley v. Am. Bakeries Co.*, 15 F.R.D. 391, 392 (E.D. Tenn. 1954) (holding that federal rules apply only after removal "and neither add to nor abrogate what has been done in the state court prior to removal"); Fed. R. Civ. P. 81(c) ("These rules apply to a civil action after it is removed from a state court.").

ORDER- 9

RCPO's agent under RCW4.28.080(13). (*See* Resp. at 2-3.) The court will address each of Mr. Head's bases for service upon RCPO in turn.

### 1. Tolling under RCW 4.16.070 and the *Sidis* Rule

As noted above, in *Sidis*, the Washington Supreme Court held that service on one defendant under RCW 4.16.070 tolls the statute of limitations as to the other, not-as-yet served, defendants. *Sidis*, 815 P.2d at 783.[7] Mr. Head asserts that he is entitled to the benefit of this tolling provision with respect to his service of process upon RCPO in August 16, 2012, because he had filed his suit within the statutory period and already served HSNA and Norton Lilly within the 90-day period permitted under RCW 4.16.170. Thus, even if his service upon RCPO was more than four years following his accident, his claim is not time-barred because the statute of limitations was tolled by the *Sidis* rule. (*See* Resp. at 3-4.)

"To qualify for *Sidis* tolling, at least one of the served defendants must be properly named in the lawsuit." K. Tegland, 14 Wash. Prac., Civil Procedure § 7:12 n.15.50 (2d ed. 2009 & Supp. 2013). In *Teller v. APM Terminals Pac., Ltd.*, 142 P.3d 179 (Wash. Ct. App. 2006), the court of appeals declined to permit a plaintiff to manipulate the *Sidis*

---

[7] It should be noted that the *Sidis* Court also emphasized that the tolling provided under RCW 4.16.070 is not without limits:

> While it is true that RCW 4.16.170, literally read, tolls the statute of limitation for an unspecified period, that period is not infinite, as the court implied. Plaintiffs must proceed with their cases in a timely manner as required by court rules, and must serve each defendant in order to proceed with the action against that defendant. A plaintiff who fails to serve each defendant risks losing the right to proceed against unserved defendants if the served defendant is dismissed.

*Sidis*, 815 P.2d at 783.

ORDER- 10

rule, by naming and serving improper defendants in order to circumvent the statute of limitations. *Id.* at 188. In *Teller*, the plaintiff brought suit against the driver of a car involved in an automobile accident and also named the entity he believed was the driver's employer. *Id.* at 182. The plaintiff, however, initially named the wrong entity as the driver's employer, voluntarily dismissed his claim against the entity, and filed an amended complaint naming five additional corporate entities in an attempt to sue the driver's actual employer. *Id.* All five corporate defendants notified the plaintiff that they were not proper defendants. *Id.* They offered to reveal the identity of the real employer in a deposition if the plaintiff would agree to voluntarily dismiss them after the deposition. *Id.* During the deposition, the identity of the employer was disclosed. *Id.* The following day, the plaintiff filed a second amended complaint naming the correct employer of the driver and a few days later voluntarily dismissed the other five corporate entities. *Id.* The remaining corporate defendant, who actually was the driver's employer, then moved for summary judgment arguing that the amended complaint did not relate back and that the statute of limitations had run. *Id.* at 183.

The plaintiff argued that the defendants had forced him to dismiss his claim against the five other corporate defendants preventing him from taking advantage of the *Sidis* rule that the tolling provision of RCW 4.16.170 applies so long as "one or more defendants" are served. *Teller*, 142 P.3d at 188 (citing *Sidis*, 815 P.2d 783). The Washington Court of Appeals, however, held that the plaintiff's initial service upon the five incorrect corporate defendants did not toll the statute of limitations as to the proper corporate defendant. *Id.* at 188. Specifically, the court stated:

> [Plaintiff's] service on the five [corporate] defendants did not toll the statute of limitations because they were never proper defendants in [Plaintiff's] action. Other than [the driver]—who was presumably not served because [Plaintiff] was unable to ascertain her name—[Plaintiff] named and served only improper parties before naming [the driver's employer]. Although the tolling statute provides extra protection to plaintiffs in multi-defendant actions from the harsh effects of the statute of limitations, *Sidis*, 117 Wash.2d at 330, 815 P.2d 781, neither the tolling statute nor the *Sidis* decision allows plaintiffs to circumvent the statute of limitations by naming and serving one or more improper defendants in order to acquire extra time to determine the correct defendant.

*Id.* In other words, the dismissal of the five corporate defendants was of little import because the plaintiff's service upon these improper defendants had not tolled the statute of limitations with respect to the proper corporate defendant in the first place.

RCPO argues that, just as the statute of limitations was never tolled in *Teller* by the plaintiff's service of process upon improper defendants, the statute of limitations was never tolled by Mr. Head's service of process on HSNA or Norton Lilly. (*See generally* Mot.) The court agrees. In his response to RCPO's motion, Mr. Head never explains his bases for suing HSNA or Norton Lilly. He implies that HSNA is the charterer of the vessel,[8] but provides no evidence to support his assertion and thus does not create a disputed question of fact on this issue.[9] (*See* Resp. at 2.) He provides no rationale as to his theory of liability for Mr. Head's injuries with respect to either HSNA as the agent of

---

[8] Mr. Head states that "[o]ther defendants include an entity later discovered to be the charterer of the vessel (Hamburg Sud)." (Resp. at 2.)

[9] In contravention to Mr. Head's implied assertion that HSNA is the charterer of the vessel, RCPO has identified competent evidence in the record substantiating its claim that HSNA is a local agent that acts for time charterers, and that it acted as the agent for the time charterer of the M/V CAP PRESTON, but was not itself the time charterer. (Verification of State Court Records, Ex. A at 59-62 (attaching Rossland Decl.) ¶¶ 3-4.) Thus, there is no genuine issue of material fact with respect to HSNA's status.

ORDER- 12

the vessel's time charterer or Norton Lilly as the agent of the vessel. (*See generally* Resp.) He does not explain his utter failure to respond or mount any opposition to either HSNA's or Norton Lilly's respective motions for summary judgment, and he does not explain or deny his counsel's statements that the only reason he sued Norton Lilly was to try to obtain service of process on the owner and operator of the vessel and that he would not agree to dismiss Norton Lilly because he needed more time to accomplish that service. (*See generally* Resp.)

Based on this record, and in the absence of any explanation from Mr. Head, the court must conclude that Mr. Head had no valid basis in fact to sue either HSNA or Norton Lilly with respect to the claim for his injuries. The court is left with the conclusion that these Defendants were added to Mr. Head's complaint and served with process to enable him to improperly toll the statute of limitations under RCW 4.16.170 and the *Sidis* rule to acquire extra time to serve process upon RCPO. Washington courts do not permit parties to manipulate the statute of limitations and the *Sidis* tolling rule in this manner. *See Teller*, 142 P.3d at 188. Accordingly, the court finds that Mr. Head's service upon HSNA and Norton Lilly did not toll the running of the statute of limitations with respect to RCPO.

**2.    Service Pursuant to RCW 4.28.080(13)**

Mr. Head, however, also argues that under RCW 4.28.080(13) his July 26, 2011, service upon Norton Lilly's registered agent accomplished effective service upon RCPO as well. (Resp. at 2-3.) If so, then Mr. Head's service of process upon RCPO would have been timely irrespective of any tolling under the *Sidis* rule. RCW 4.28.080(13)

ORDER- 13

provides that a plaintiff may serve a steamship company by service upon "any agent authorized . . . to solicit cargo or passengers for transportation to or from ports in the state of Washington." *Id.* Based on the Ballast Water Reporting Form, which was submitted by the M/V CAP PRESTON to the WDFW prior to its arrival at the Port of Seattle on August 15, 2008, and which identified Norton Lilly as an "[a]gent," Mr. Head asserts that service of process on Norton Lilly's agent accomplished service on RCPO as well because Norton Lilly is RCPO's agent.

The M/V CAP PRESTON submitted the Ballast Water Reporting Form to the WDFW on August 18, 2008. (Pozzi Decl. ¶ 3, Ex. 2.) The Form lists Norton Lilly as an "Agent." (*See id.*) Nowhere does the Form expressly state for whom or what Norton Lilly is serving as an agent. It is possible that the Form is denoting Norton Lilly as agent for the vessel M/V CAP PRESTON. It is also possible that the Form is denoting Norton Lilly as agent for RCPO, which is listed on the Form as the vessel's owner.[10] It is also possible that the designation of Norton Lilly as agent on the form has some other meaning entirely. The Form is simply too cryptic to know. (*See id.*) In addition, even if the court were to construe the Form for purposes of summary judgment as connoting Norton Lilly to be RCPO's agent, nowhere does the Form state or even indicate that Norton Lilly has been authorized as an agent "to solicit cargo or passengers for

---

[10] A vessel generally is viewed as a juristic person, responsible in rem for acts and omissions of the vessel's personnel, separate and distinct from the vessel's owner. *All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427 (9th Cir. 1993); *QT Trading L.P. v. M/V SAGA MORUS*, NO. CV 10-1509 CBM MANX, 2010 WL 8923326, at *3 (C.D. Cal. Nov. 5, 2010).

transportation to or from ports in the state of Washington" as required under RCW 4.28.080(13). Finally, Mr. Head provides no evidence that might aid in interpreting the Form from the WDFW, the individual who signed the form, Norton Lilly, or anyone else.

In contrast to this evidentiary vacuum, RCPO submits a declaration with its reply memorandum[11] from an official at RCPO stating that, during the relevant time period, RCPO managed the M/V CAP PRESTON and continuously bareboat chartered and time chartered the vessel to other entities who are not defendants in this lawsuit. (Kostowski Decl. (Dkt. # 28) ¶ 7.) Further, the declaration states that RCPO had no reason to solicit any cargo or passengers for transportation on the M/V CAP PRESTON during the relevant time period, and it "did not authorize any ship husbandry agent or anyone else to act as its agent in the State of Washington to solicit cargo or passengers for transportation

---

[11] Ordinarily, a district court will not consider evidence in the context of a motion for summary judgment that is submitted for the first time in reply. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond") (internal alteration and quotation marks omitted). However, here, RCPO submitted the declaration with its reply memorandum in direct response to an argument raised in Mr. Head's response. Further, RCPO's reply and the declaration in question were filed on December 6, 2013—approximately two and a half months ago. (*See generally* Reply, Kostowski Decl.) At no time since that date has Mr. Head or his counsel objected to RCPO's introduction of the declaration or sought permission to file a sur-reply or additional evidence in response. Because Mr. Head has not objected to RCPO's introduction of an additional declaration in reply, the court may in its discretion consider this evidence when deciding RCPO's motion for summary judgment. *See Getz v. Boeing Co.*, 654 F.3d 852, 868 (9th Cir. 2011) ("[B]y failing to object or otherwise challenge the introduction of the [evidence submitted in reply] in the district court, Plaintiffs waived any challenge on the admissibility of th[e] evidence."); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 n.1 (9th Cir. 2006) )(per curiam) (holding that the district court did not err in considering evidence first submitted in the moving party's reply to the opposition to summary adjudication where the evidence was introduced to counter claims made in the opposition, and the non-moving party could have asked the district court for permission to respond).

to or from ports in the State of Washington." (*Id.* ¶ 9.) More specifically, the declaration states that "[a]t no time during 2011 did RCPO authorize Norton Lilly . . . to solicit cargo or passengers for transportation by RCPO to or from ports in the State of Washington," or "to act as an agent for service of process in the State of Washington." (*Id.* ¶¶ 10, 11.) Indeed, RCPO did not authorize anyone to act as its agent for service of process in the State of Washington in 2011. (*Id.* ¶ 12.) Finally, the declaration substantiates that Norton Lilly did not transmit a copy of the summons and complaint that Mr. Head served upon Norton Lilly's agent to RCPO. (*Id.* ¶ 13.)

Irrespective of the Ballast Water Reporting Form's indeterminate designation of Norton Lilly as an "[a]gent," the foregoing evidence from RCPO is sufficient for the court to conclude on summary judgment that Norton Lilly was not RCPO's agent, and even if Norton Lilly was somehow RCPO's agent, that Norton Lilly was not authorized by RCPO to solicit cargo or passengers for transportation to or from ports in the state of Washington as required for service of process under RCW 4.28.080(13). Viewing the evidence in the light most favorable to Mr. Head, as the court is required to do in the context of a motion for summary judgment, no reasonable juror could conclude otherwise on the basis of the present record. If Norton Lilly does not qualify as RCPO's agent as described in RCW 4.28.080(13), then Mr. Head's service of process on Norton Lilly in 2011 could not have been effective service upon RCPO.[12] Because the court has already

---

[12] This court could find no case in which a Washington State court considered service of process under RCW 4.28.080(13). Although the case law lacks crystal clarity, some courts in Washington have held that other subsections of RCW 4.28.080 are reviewed for "substantial

1  determined that service upon Norton Lilly and HNSA did not toll the statute of

2  limitations under the *Sidis* rule, Mr. Head's failure to serve RCPO within the statutory

3  period is fatal to his claim.

4        The court's ruling in this matter may seem to create a harsh result—the dismissal

5  of what may be an otherwise viable personal injury claim by Mr. Head.  Statutes of

6  limitation, however, serve to prevent stale lawsuits and to provide finality to claims.  *See*

7  *John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 133 (2008) ("Most statutes of

8  limitations seek primarily to protect defendants against stale or unduly delayed claims.");

9  *see also McLean v. Tetra Tech EC, Inc.*, No. C06-5508RBL, 2007 WL 1577741, at *3

10  (W.D. Wash. May 31, 2007).  Attorneys have a duty to investigate, name proper parties

---

compliance."  For example, some Washington courts have held that service on a foreign corporation under RCW 4.28.080(10) is reviewed for substantial compliance with the inquiry focusing on whether service was reasonably calculated to provide notice to the corporation.  *See Powell v. Sphere Drake Ins. P.L.C.*, 988 P.2d 12, 17 (Wash. Ct. App. 1999) (citing *Reiner v. Pittsburg Des Moines Corp.*, 680 P.2d 55, 57-58 (Wash. 1984)); *but see Nitardy v. Snohomish Cnty.*, 712 P.2d 296, 297 (Wash. 1986) ("The subsections of RCW 4.28.080 seem clear and explicit in their requirements on how to effectuate service. This analysis we recognize may call into question this court's decision in *Reiner*. . . ."); *Fox v. Sunmaster Prods., Inc.*, 821 P.2d 502, 505 n.5 (Wash. Ct. App. 1991) (noting subsequent criticism of *Reiner* decision).  "'Substantial compliance has been defined as actual compliance in respect to the substance essential to every reasonable objective of the statute.  It means a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted.'" *James v. Kitsap Cnty.*, 115 P.3d 286, 293 (Wash. 2005) (quoting *In re Habeas Corpus of Santore*, 623 P.2d 702, 707 (Wash. Ct. App. 1981)); *see also Skinner v. Civil Serv. Comm'n City of Medina*, 232 P.3d 558, 562 (Wash. 2010) ("In determining whether a party has substantially complied with service requirements, the relevant inquiry is whether the party to be served has received actual notice of appeal or the notice was served in a manner reasonably calculated to give notice to the opposing party.").  When determining whether a person is an "agent" for purposes of accepting service of process under RCW 4.28.080(10), a court looks to "all the surrounding facts and proper inferences therefrom." *See Fox*, 821 P.2d at 505.  Even assuming that Washington courts would apply the foregoing "substantial compliance" standards to RCW 4.28.080(13), the court finds that its result would be no different and that RCPO would still be entitled to summary judgment based on the running of the statute of limitations.

as defendants, and timely serve process so that this result does not occur. Based on the foregoing record, the court GRANTS RCPO's motion for summary judgment based on the statute of limitations and dismisses RCPO with prejudice from this lawsuit.

## IV. CONCLUSION

Based on the foregoing, the court GRANTS RCPO's motion for summary judgment (Dkt. # 20).

Dated this 21st day of February, 2014.

JAMES L. ROBART
United States District Judge

ORDER- 18